UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE KEENE,

        Plaintiff,

v.

GERALD ROSSI, individually, THE
EVERETT R. CASEY LIVING TRUST
through Trustee Gerald Rossi, KATHRYN
M. CASEY, KIRK CASEY, LOPRETE &
LYNEIS, P.C., MARY M. LYNEIS, and THE
ESTATE OF EVERETT R. CASEY, through
Personal Representative Gerald Rossi,

        Defendants,

_____/

Civil Action No. 15-10977
Honorable Gerald E. Rosen
Magistrate Judge David R. Grand

**ORDER GRANTING PLAINTIFF'S MOTIONS
FOR LEAVE TO FILE SURREPLIES [33, 34, 35]**

**and**

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTIONS TO DISMISS [14, 16, 17] AND FOR SANCTIONS [31, 43, 44]**

## I.   REPORT

### A.   Background

On March 13, 2015, plaintiff Bruce "Beau" Keene ("Beau") filed a complaint against

seven defendants:  Gerald Rossi (individually), The Everett R. Casey Living Trust (through its

Trustee, Gerald Rossi), and The Estate of Everett R. Casey (through its Personal Representative,

Gerald Rossi) (collectively the "Rossi Defendants"); Kathryn M. Casey ("Kathryn"); Kirk C.

Casey ("Kirk"); and Loprete & Lyneis, P.C. and Mary M. Lyneis (collectively the "Lyneis

Defendants").  (Doc. #1).  On March 19, 2015, Keene filed an amended complaint naming the

same seven defendants.  (Doc. #8).  Pending are three separate motions to dismiss, filed by

Kathryn, the Rossi Defendants, and the Lyneis Defendants.  (Docs. #14, 16, 17).  In addition, each of those movants filed a motion for sanctions against Beau.  (Docs. #31, 43, 44).  All of these motions were referred to this Court for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1]

### B.    The Parties

Everett Casey ("Everett"), who was the sole shareholder of Precision Standard, Inc. ("PSI"), died on March 24, 2012.  (Doc. #8 at ¶¶25, 51, 100).  Everett was married to Mary Alice, who predeceased him, and they had two children:  defendants Kathryn and Kirk.  (*Id.* at ¶¶19, 20, 55).  Beau, who alleges that he worked at PSI from 1990-1993 and 2010-2012, claims that he is Everett's biological child as the result of an extra-marital affair between Everett and Beau's mother, Corinne Keene.  (*Id.* at ¶52).  Corinne Keene was married to Robert Keene when Beau was conceived and born, and it is undisputed that no one – including Robert Keene – challenged the legal paternity of Beau before Robert Keene died.

The Lyneis Defendants consist of a law firm (Loprete & Lyneis, P.C.) and one of its lawyers (Mary Lyneis), who were retained by Everett in 2011 to revise his estate planning documents.  (*Id.* at ¶71(c)).  Mary Lyneis drafted a new will for Everett,[2] but Everett never signed it.  (Doc. #8-1 at 27).  After Everett's death, Kathryn filed a petition to probate his estate in the Oakland County Probate Court.  (Doc. #17-5).  The Lyneis Defendants represented Gerald Rossi, the personal representative of Everett's estate, in the probate court proceedings.  (Doc. #8 at ¶132).  According to Beau, Rossi served as a consultant and certified public accountant to both Everett and PSI for more than thirty years and was Everett's "most trusted confidant."  (*Id.* at

---

[1] On April 27, 2015, Kirk Casey filed an answer to Beau's amended complaint.  (Doc. #20).  He has not filed a motion to dismiss or for sanctions.

[2] He had executed a prior one on July 18, 1997 (the "1997 Will").

¶8). Thus, Beau also sues Rossi, the Everett R. Casey Living Trust, and the Estate of Everett R. Casey.

### B.    The Oakland County Probate Litigation

In early April 2012, Kathryn filed a petition in the Oakland County Probate Court, seeking to have a photocopy of Everett's 1997 Will admitted to probate. (Doc. #17-5). The 1997 Will directs that, since Mary Alice predeceased Everett, all of Everett's personal property was to be divided between his "children," which the document defined as "natural or legally adopted children, whether born or adopted subsequent or prior to the execution of this instrument." (*Id.* at 4, 10). The 1997 Will further directed that all of Everett's other property should be transferred to the Everett R. Casey Living Trust. (*Id.* at 5). Beau, through counsel, responded and objected to Kathryn's petition, asserting that he was Everett's child and heir, and claiming that an investigation was necessary to determine whether the 1997 Will had been revoked or superseded. (Doc. #17-3 at 3).

On May 1, 2012, Gerald Rossi, as Personal Representative of Everett's estate, filed a Petition for Order Requiring Return of Estate Asset, demanding that Beau return cash and PSI assets that Beau admittedly had taken from a safe at PSI. (Doc. #17-7). Again, Beau, through counsel, responded and objected to this petition, claiming that (1) Everett had given him, through an *inter vivos* gift, the safe's contents, and (2) Everett wanted him to become the owner of PSI upon Everett's death. (Doc. #17-8).

Kathryn filed three summary disposition motions in the probate court, seeking determinations that: (1) Beau and his sister, Renee Keene, were not heirs to Everett's estate; (2) the 1997 Will was valid and had not been revoked; and (3) Beau did not have a right to take the safe's contents, which needed to be returned to the estate. Beau filed responses to each of these

motions.  (Docs. #17-9, 17-10, 17-11).  In what the Michigan Court of Appeals later described as a "thorough written opinion and order," the probate court granted Kathryn's motions, ruling, in pertinent part:

> 1.  Beau and his sister, Renee, are not Everett's "children" as defined by Michigan's Estate and Protected Individuals Code and, therefore, they are not Everett's heirs at law or interested persons; and
>
> 2.  Everett's 1997 Will was not revoked, nor were any subsequent estate planning documents executed that supersede the 1997 Will and, therefore the 1997 Will would be admitted to probate and control administration and distribution of Everett's estate; and
>
> 3.  Everett did not make a valid *inter vivos* gift of the contents of the safe at PSI to Beau and, therefore, Beau had no right to take any money or property from that safe.

(Doc. #17-3).

Beau appealed to the Michigan Court of Appeals.  (Doc. #17-12).  After his counsel withdrew in December 2013, Beau represented himself at oral argument before the Michigan Court of Appeals.  (Doc. #8 at ¶50 (referring to Beau's website, timothy610.com, where oral arguments before the Court of Appeals allegedly can be found)).  On July 31, 2014, the Michigan Court of Appeals affirmed the probate court's decision, finding that, as a matter of law, Beau and Renee could not establish that they were Everett's natural children.  *See In re Casey Estate*, 306 Mich. App. 252, 261 (2014).  The Court of Appeals also rejected Beau's argument that there was a genuine issue of material fact regarding the alleged *inter vivos* gift of the contents of Everett's safe, finding that Beau had failed to establish one of the elements of a valid gift (delivery of the subject matter to the donee).  *Id.* at 262-64.  Beau then sought leave to appeal to the Michigan Supreme Court, which was denied on May 28, 2015.  *See In re Estate of Casey*, 497 Mich. 1027 (2015).  On October 28, 2015, Beau filed a petition for writ of certiorari with the United States Supreme Court, which remains pending.

4

### C.      The Allegations in Beau's Federal Court Complaint

On March 13, 2015 – after the Michigan Court of Appeals' decision, but before the Michigan Supreme Court denied his application for leave to appeal – Beau filed the instant federal court action.  (Doc. #1).  Proceeding *pro se*, Beau claims that he brought this action to "seek justice for his biological father," to "disgorge Defendants of ill-gotten new wealth," and to obtain "compensation for damages resulting from the criminal, immoral, and tortious actions" taken against him by the defendants.  (Doc. #8 at ¶1).  Beau acknowledges in his federal court complaint that there is a pending probate court matter, but he claims that the probate matter is "independent of, and extraneous to" this federal action.  (*Id.* at ¶36).  He asserts claims for intentional infliction of emotional distress, breach of contract, tortious interference with contract, tortious interference with economic advantage, civil conspiracy, fraudulent misrepresentation, and "constructive trust."  (Doc. #8).

### D.      The Pending Motions

On April 22 and 23, 2015, three motions to dismiss were filed in this action:  one by the Lyneis Defendants (Doc. #14); one by the Rossi Defendants (Doc. #16); and one by Kathryn (Doc. #17).  Beau responded to each of the dispositive motions (Docs. #25, 26, 27), and the movants replied (Docs. #29, 30, 32).  On June 12, 2015, Beau filed three motions for leave to file "surreplies."  (Docs. #33, 34, 35).  The Lyneis Defendants, the Rossi Defendants, and Kathryn filed responses opposing these motions (Docs. #37, 38, 39), to which Beau replied (Docs. #40, 41, 42).

Additionally, in June 2015, the Lyneis Defendants, the Rossi Defendants, and Kathryn filed motions for sanctions pursuant to Fed. R. Civ. P. 11(c).  (Docs. #31, 43, 44).  The motions seek an award of monetary sanctions against Beau "in an amount sufficient to deter future

frivolous actions," as well as a Court order permanently enjoining Beau from filing any further lawsuits arising out of the same factual or legal claims without first seeking leave of court.  (*E.g.*, Doc. #31 at 9-10).  Beau responded to each of these motions (Docs. #36, 45, 46), and no replies were filed.

### E.     Analysis

#### 1.     *The Defendants' Motions to Dismiss (Docs. #14, 16, 17)*

In their respective motions to dismiss, the defendants assert that Beau's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because, pursuant to the so-called "probate exception," this Court lacks subject matter jurisdiction over claims arising out of or relating to the settlement of an estate.  (Doc. #14 at 19-23; Doc. #16 at 14-16; Doc. #17-1 at 26-27).  The defendants further argue that, even if this Court has subject matter jurisdiction over Beau's claims, the claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because they are barred by *Rooker-Feldman* and/or the doctrines of *res judicata* and collateral estoppel.  (*Id.* at 23-25; *Id.* at 17-18; *Id.* at 24-26).  Finally, the defendants argue that if the Court were to reach the merits of Beau's claims, dismissal is still appropriate under Fed. R. Civ. P. 12(b)(6) because Beau fails to state a claim upon which relief can be granted.  (*Id.* at 26-36; *Id.* at 18-24; *Id.* at 16-24).  Each of these arguments will be addressed in turn.

#### a.     *The Applicable Legal Standards*

Fed. R. Civ. P. 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction.  "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties:  a facial attack or a factual attack."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack questions the sufficiency of the pleadings, taking all allegations in the complaint as true.  *Id.*  Conversely, in a factual attack, there is no presumptive truthfulness, and the court must weigh conflicting evidence to determine

whether subject matter jurisdiction exists. *Id.* Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

> b.   *This Court Lacks Subject Matter Jurisdiction over Beau's Claims because they are Barred by the "Probate Exception"*

In their motions, the defendants argue that this Court lacks subject matter jurisdiction over Beau's claims because of a doctrine known as the "probate exception" to federal court jurisdiction.[3] (Doc. #14 at 19-23; Doc. #16 at 14-16; Doc. #17-1 at 26-27). It is well-settled that "a federal court has no jurisdiction to probate a will or administer an estate ...." *Markham v. Allen*, 326 U.S. 490, 494 (1946). The Supreme Court delineated the probate exception's "distinctly limited scope" in *Markham*, noting that:

> … federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

---

[3] The Lyneis Defendants also argue that this Court lacks jurisdiction over Beau's claims because Michigan's Estates and Protected Individuals Code ("EPIC"), MCL 700.1101 *et seq.*, vests in state probate courts exclusive subject matter jurisdiction over any matter that relates to the settlement of a deceased individual's estate, including tort claims arising out of the administration of the estate. (Doc. #14 at 19-20 (citing *Manning v. Amerman*, 229 Mich. App. 608 (1998)). This argument is not persuasive, however, as the United States Supreme Court has held that federal court jurisdiction cannot be impaired by state probate court legislation. *See Marshall v. Marshall*, 547 U.S. 293, 314 (2006).

*Id.* at 494 (internal citations and quotations omitted).

In the years following the Supreme Court's decision in *Markham*, however, "[l]ower federal courts … puzzled over the meaning of the words 'interfere with the probate proceedings,' and some … read those words to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006). As a result, in *Marshall*, the Supreme Court narrowed the scope of the probate exception and clarified that "the 'interference' language in *Markham* [is] essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall*, 547 U.S. at 311. Specifically, the *Marshall* court held:

> … the probate exception reserves to the state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12. In a recent decision, the Sixth Circuit reiterated the scope of the probate exception post-*Marshall*: "Since *Marshall*, we and our sibling circuits have agreed that the probate exception is narrowly limited to three circumstances: **(1) if the plaintiff "seek[s] to probate … a will"; (2) if the plaintiff "seek[s] to … annul a will"; and (3) if the plaintiff "seek[s] to reach the *res* over which the state court had custody."** *Chevalier v. Estate of Barnhart*, 2015 WL 5729456, at *9 (6th Cir. Oct. 1, 2015) (quoting *Wisecarver v. Moore*, 489 F.3d 747, 750 (6th Cir. 2007) (emphasis added). Here, the defendants argue that the second and third prongs of the probate exception are satisfied because Beau is seeking to "nullify" Everett's 1997 Will and "interfere with the *res* of the estate."[4] (*E.g.,* Doc. #30 at 1).

---

[4] The Lyneis Defendants also assert that Beau is "seeking to probate a will," but a closer reading

As an initial matter, as the defendants point out, throughout his amended complaint, Beau repeatedly alleges that he is entitled to PSI.  (*E.g.,* Doc. #8 at ¶¶170 ("Everett did tell Rossi that he wanted to leave PSI to Plaintiff"), 178 ("[Everett told Rossi] Beau is my son and I want you to give [] him the company when I die"), 188 ("Defendants knew that Everett was leaving PSI to Plaintiff"), 192 (Beau had a "valid expectancy to become the owner of PSI"), 202 ("As a result of the conspiracy and Defendants' illegal, wrongful, or tortious acts, Plaintiff was damaged by the deprivation of the very profitable company in PSI"), 217 ("Plaintiff is truly and equitably entitled to PSI and a constructive trust is necessary to prevent a failure of justice")).  In his first two requests for relief, Beau asks this Court to impose a constructive trust over PSI for his benefit because of the alleged tortious conduct of the defendants in depriving him his right to the company.  (Doc. #8 at 39-40).  Thus, the defendants argue, granting this requested relief "would have the effect of annulling the 1997 Will," which provided that PSI would pass to Kathryn and Kirk, meaning that the probate exception bars Beau's claims.  The Court disagrees.

In *Chevalier*, the Sixth Circuit reiterated that the probate exception is "narrowly limited" and applies only if the case actually requires the federal court to perform one of the three acts specifically enumerated in *Marshall* – probate a will, annul a will, or dispose of property in the state probate court's custody.  *Chevalier*, 2015 WL 5729456, at *9.  The *Chevalier* court cited favorably a recent Fourth Circuit decision holding that a case requiring interpretation of a trust and partnership agreement, but not a will, did not invoke the probate exception, despite the fact that entering the declaratory judgment requested by the plaintiff "may affect future distributions"

---

of their argument in this respect reveals that they are actually arguing that the third prong of the probate exception applies because Beau is allegedly "seeking the distribution of property [PSI stock] within the custody of the state probate court."  (Doc. #32 at 14).  Indeed, there is no indication that Beau is seeking to probate a will within the meaning of the first prong of the probate exception.

from the underlying estate. *Id.* (citing *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015)). The *Lee Graham* court explicitly stated:

> [The probate exception] applies only if a case actually requires a federal court to perform one of the acts specifically enumerated in *Marshall:* to probate a will, to annul a will, to administer a decedent's estate; or to dispose of property in the custody of a state probate court. **A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks.**

*Id.* (emphasis added).

As to the probate exception's second prong, Beau has the better argument. While granting the relief Beau seeks would undoubtedly "impact" the state probate court's administration of Everett's estate, Beau is not asking this Court to actually annul Everett's 1997 Will (or to probate a different will, for that matter). Thus, the probation exception's second prong does not apply.

However, the probate exception's third prong does apply to bar Beau's claims in this Court because, in the end, the relief that Beau seeks all revolves around imposing a constructive trust over PSI stock (or otherwise disgorging Defendants of any of Everett's assets that they have may have received through the probate court proceedings involving his estate) (Doc. #8 at 39-41), when doing so would "undoubtedly interfere with the *res* of the estate, as PSI stock is included in the Estate Inventory." (Doc. #30 at 4). Indeed, the date-of-death inventory for Everett's probate estate, which was filed with and accepted by the Oakland County Probate Court, establishes that all of PSI's stock was owned by Everett, not his trust, on the date of Everett's death.[5] (Docs. #29-2, 29-3). Thus, the PSI stock became part of Everett's probate

---

[5] After Kathryn filed a reply brief in support of her motion to dismiss, attaching as an exhibit the Estate Inventory filed with the Oakland County Probate Court (Doc. #29-2), Beau filed three separate motions for leave to file surreplies to the defendants' reply briefs (Docs. #33, 34, 35). In these motions, Beau accuses the defendants of withholding this "critical evidence" and claims that he "honestly thought PSI was a trust asset." (Docs. #35 at 1, 40 at 2). Later in his motions,

estate and is under the custody of the probate court.

In an apparent attempt to invoke the distinction drawn by the *Marshall* court, Beau argues that this prong of the probate exception is inapplicable because he "seeks *in personam* damages from the tortfeasors." (Doc. #25-1 at 11-12 (citing *Marshall*, 547 U.S. at 311)). In *Marshall*, the Supreme Court did appear to distinguish between actions seeking "an *in personam* judgment" and actions seeking "to reach a *res* in the custody of a state court," finding that the probate exception would bar the latter, but not the former.[6] *Marshall*, 547 U.S. at 312.

In determining whether Beau's claims seek to reach the *res* over which the state probate court had custody, the Court finds instructive the Sixth Circuit's decision in *Wisecarver, supra* at 749-751. In that case, nieces and nephews of the decedent, who expected and felt entitled to an inheritance, sued the actual primary beneficiaries of the decedent's estate, who also held a power of attorney over the decedent. In relevant part, the plaintiffs alleged that the defendants exerted undue influence over the decedent to procure his signature on testamentary documents (that should not be given effect as a result). The plaintiffs sought various types of relief, including an

---

however, Beau admits that the Estate Inventory was not "new evidence," and that he previously was provided a copy of it during the course of the probate court litigation. (Doc. #35 at 2). Thus, the defendants did not "spring" this argument on Beau in their reply briefs, and the requested surreplies are largely unnecessary. Regardless, in the interest of ensuring that all of Beau's arguments are fully and thoroughly considered, the Court will **GRANT** his motions for leave to file surreplies (**Docs. #33, 34, 35**) and consider those motions, as well as the defendants' responses (**Docs. #37, 38, 39**), and Beau's replies (**Docs. #40, 41, 42**) in ruling on the other pending motions.

[6] In *Chevalier*, the Sixth Circuit recognized that the key issue, for purposes of determining whether the probate exception applied, was whether the plaintiff was seeking to reach the *res* over which the state probate court had custody. *See Chevalier*, 2015 WL 5729456, at *10. In making this determination, the court distinguished between *in personam* actions (where "[a]n action [is] brought against a person rather than property" and the judgment "is binding on the judgment-debtor and can be enforced against all the property of the judgment-debtor") and an *in rem* action (which "are fights over a property or a person in the court's control"). *Id.* (internal citations omitted). As explained in greater detail below, however, the Court is not persuaded that this distinction is so simple, as certain *in personam* actions clearly seek to "reach a *res* in the custody of a state court," and thus fall within the probate exception. *Marshall*, 547 U.S. at 312.

injunction against disposal of the assets the defendants received under the will, an order declaring the will invalid, and ordering that the defendants be divested of all property that should be returned to the plaintiffs as heirs and beneficiaries under the prior will.

The *Wisecarver* court first noted that several recent Circuit Court decisions:

> … follow *Marshall's in personam/in rem* distinction and find that the principles underlying the probate exception are not implicated when federal courts exercise jurisdiction over claims seeking *in personam* jurisdiction based upon tort liability because the claims do not interfere with the *res* in the state court probate proceedings or ask a federal court to probate or annul a will.

*Id.* at 751.  The court further recognized that, "Liberally construed, Plaintiffs' claims for breach of fiduciary duty, breach of confidential relationship, undue influence, and fraud are not barred by the probate exception because they seek *in personam* jurisdiction over the Defendants and do not seek to probate or annul a will."  *Id.* at 750.  Rather than drawing a hyper-technical distinction between *in personam* or *in rem* jurisdiction, however, the Sixth Circuit applied a common sense approach in considering the actual effect of the plaintiff's *in personam* claims on the *res* of the estate, saying:

> Even though these claims in this case seek *in personam* jurisdiction, **a majority of the relief that Plaintiffs seek** would involve disturbing [the decedent's] estate, which has already been probated.  For instance, Plaintiffs seek:  (1) an order enjoining Defendants' disposition of assets received from [the decedent's] estate, (2) an order divesting Defendants of all property retained by them, which should be turned over to Plaintiffs as the heirs, next of kin, and intended beneficiaries of the deceased, and (3) a declaration that [the decedent's] probated will be declared invalid and that Defendants be denied any of the benefits of [the decedent's] will.  **Granting this relief is precisely what the probate exception prohibits because it would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets.**

*Id.* at 751 (citing *Marshall*, 547 U.S. at 311-12) (emphasis added).  Accordingly, the court held that the relevant claims were barred by the probate exception, despite the fact that they

technically were pled as *in personam* claims.  *See Wisecarver*, 489 F.3d at 751.

Other recent circuit court decisions have taken a similar approach to determining whether a plaintiff's claims invoke the probate exception's third prong.  For example, in *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220 (3d Cir. 2008), also cited favorably by the Sixth Circuit in *Chevalier*, the court recognized that, despite bringing *in personam* claims (for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and civil conspiracy), the plaintiff's claims "whether characterized as an *in personam* action or not, require[d] the District Court to 'endeavor[] to dispose of property that is in the custody of a state probate court,' which is prohibited by the probate exception."  *Three Keys*, 540 F.3d at 230 (quoting *Marshall*, 547 U.S. at 312).  As a subsequent case interpreting *Three Keys* summarized:

> Thus, the [*Three Keys*] court urged district courts to adopt a functional approach to applying the *in rem* prohibition of the probate exception: instead of relying solely on the face of the complaint before it, a court's task is to appreciate the "distinction between an *in personam* action seeking judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an *in rem* action … which seeks a determination of a party's interest in specific property in the custody of the probate court."  Having determined that all of the plaintiff's claims necessarily entailed an *in rem* component, the court ordered that all aspects of those claims, including the related prayers for compensatory and punitive damages, be dismissed for want of jurisdiction.

*Rothberg v. Marger*, 2013 WL 1314699, at *6 (D.N.J. Mar. 28, 2013) (quoting *Three Keys*, 540 F.3d at 229-30) (internal citations omitted).

Similarly, in *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677 (2d Cir. 2015), the Second Circuit considered claims brought by the residual beneficiaries of a testamentary trust, asserting that two of the trust's trustees breached various duties by making improper distributions from the trust.  In affirming the dismissal of the plaintiffs' claims for lack of subject matter jurisdiction, the court concluded that the *in rem* prong of the probate exception barred the

plaintiff's claims because the state Surrogate's Court (the equivalent of a Michigan probate court) had supervisory control of the administration of the trust.  In that case, as here, the plaintiffs argued that their claims were *in personam* and would not require the federal court to exercise control over the trust in a way that would interfere with the Surrogate Court's control of it.  The Second Circuit disagreed, saying, "Although Plaintiffs have styled their claims in this case as 'in personam' claims against Defendants for breach of fiduciary duty, breach of contract, and breach of the duty of loyalty, we must examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used."  *Id.* at 679.  The court thus found that where the plaintiffs were asking the federal court to "undo" certain actions taken during the period of probate administration, which with the plaintiffs disagreed, their claims were barred by the probate exception.  *Id.* at 680.

Here, as in *Wisecarver*, *Three Keys*, and *Mercer*, it is appropriate to apply this "functional," substance-over-form approach to determining whether Beau's claims are barred by the probate exception's third prong.[7]  In his amended complaint, Beau asks this Court to impose

---

[7] The Court recognizes that *Chevalier* does not appear to have employed *Wisecarver's* functional approach but, rather, simply considered whether the plaintiff's claims were *in personam* or *in rem* under applicable state law based on the type of *claim* being asserted.  *See Chevalier*, 2015 WL 5729456, at *10-11.  *Wisecarver's* approach, however, seems more in line with the U.S. Supreme Court's ruling in *Marshall*, 547 U.S. at 312, which focuses on whether the plaintiff is asking the Court to "dispose of property that is in the custody of a state probate court," regardless of the type of claim through which that relief is being sought.  *See also Carpenters Pension Trust Fund – Detroit and Vicinity v. Century Truss Co.*, 2015 WL 1439868, at *6 (E.D. Mich. Mar. 27, 2015) ("Plaintiff next claims that it is not really suing the Estate because the funds are improperly in the custody of the Estate…However, there is no exception to the probate exception that permits *in rem* actions against an estate so long as the property is allegedly improperly in the hands of the estate.  In *Marshall*, the Supreme Court drew the distinction between *in rem* and *in personam* actions.  According to *Marshall*, because the state court is exercising jurisdiction over the *res* of the Estate, this Court cannot exercise jurisdiction over the same *res*…In sum, Plaintiff's suit is against the Estate for the recovery of property, *i.e.* an action *in rem*.  As an action *in rem*, the Court's exercise of jurisdiction here would implicate the purposes of the probate exception because it would disturb the state court's probate proceedings over property in

a constructive trust over PSI for his benefit because of the alleged tortious conduct of the defendants in depriving him of his right to the company.  (Doc. #8 at 39-40).  It is clear, though, that PSI was owned by Everett at the time of his death and, thus, is included in his probate estate and is within the custody and control of the Oakland County Probate Court.   (Docs. #29-2, 29-3).  He also seeks to disgorge Defendants of any of Everett's assets that they have may receive through the probate court proceedings involving his estate.  (Doc. #8 at 40).

Regardless of whether Beau characterizes his claims as *in personam*, then, the relief that he seeks would involve disturbing Everett's estate and/or undoing judicial decisions made during the probate process; placing PSI in a constructive trust for his benefit and disgorging from Defendants estate assets awarded to them by the probate court – "is precisely what the probate exception prohibits because it would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets."  *Id.* at 751.  Beau is clearly "ask[ing] a federal court to 'elbow its way into' an ongoing 'fight[] over a property or a person in [another] court's control," which is exactly what the probate exception prohibits.  *Chevalier*, 2015 WL 5729456, at *10.  For these reasons, the Court concludes that Beau's claims are barred by the probate exception and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

> c. *In the Alternative, Dismissal of Beau's Claims Against Kathryn and the Rossi Defendants is Appropriate on Preclusion Grounds and on the Merits*
>
> (1) Beau's Claims Against Kathryn and the Rossi Defendants

---

its custody.  The Court cannot exercise jurisdiction over an area where the Supreme Court has expressly recognized an exception to federal subject matter jurisdiction.").  As discussed above, there is no dispute that PSI is an asset of Everett's estate.  *See supra* at 11-12.  Moreover, *Chevalier* did not explicitly overrule *Wisecarver* (and, indeed, cited it favorably and extensively).  Thus, to the extent there is some inconsistency between *Chevalier* and *Wisecarver*, this Court believes that the functional approach set forth in *Wisecarver*, and adhered to by other circuit courts, is the appropriate approach for it to follow.

are Barred by Res Judicata and Collateral Estoppel[8]

Kathryn and the Rossi Defendants also argue that Beau's claims against them are barred by the doctrines of res judicata and collateral estoppel. (Doc. #16 at 17; Doc. #17-1 at 24-26). Federal courts sitting in diversity "must give to a state-court judgment the same preclusive effect as would be given the judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Under Michigan law, res judicata applies where: (1) the prior action was decided on the merits; (2) the matter contested in the second case was or could have been resolved in the first; and (3) both actions involved the same parties or their privies. *See Adair v. State*, 470 Mich. 105, 121 (2004). The test to determine whether the two actions involve the same subject matter is whether the facts are identical in, or the same evidence would sustain both actions; if so, the two actions are the same for purposes of res judicata. *See id.* at 123-24. Michigan courts take "a broad approach to the doctrine of res judicata, holding that it bars not only claims already

---

[8] The Rossi Defendants (as well as the Lyneis Defendants) also argue that Beau's claims are barred by the so-called *Rooker-Feldman* doctrine. (Doc. #14 at 23-25; Doc. #16 at 18). This doctrine, which has its roots in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), provides that lower federal courts lack authority to review final judgments of state courts in judicial proceedings. The Supreme Court has clarified the scope of the doctrine, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In light of *Exxon Mobil*, the Sixth Circuit has clarified that the proper focus is the source of the plaintiff's claimed injury: "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Here, where Beau's claims stem from the defendants' alleged underlying actions, and not from the probate court decision itself, it appears that *Rooker-Feldman* would not bar the instant action. Regardless, however, because the Court is recommending granting the defendants' motions to dismiss on other grounds, both jurisdictional and substantive, it need not analyze the merits of this argument in greater detail.

17

litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."  *Id.* at 121.

Similarly, collateral estoppel "precludes relitigation of an issue in a subsequent action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding."  *In re John F. Ervin Testamentary Trust*, 2008 WL 540332, at \*2 (Mich. App. Feb. 28, 2008) (citing *Leahy v. Orion Twp.*, 269 Mich. App. 527, 530 (2006) and *Ditmore v. Michalik*, 244 Mich. App. 569, 577 (2001)).  Generally, then, for collateral estoppel to apply:  (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel.  *See Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682 (2004).

Both collateral estoppel and res judicata are "intended to relieve parties of multiple litigation, conserve judicial resources, ease fears of prolonged litigation, prevent inconsistent decisions, and encourage reliance on adjudication."  *In re John F. Ervin Testamentary Trust*, 2008 WL 540332, at \*2 (citing *Monat*, 469 Mich. at 692-93).  "It also bears emphasis, and the case law confirms, that these same preclusion standards and principles apply with full force to the determinations of Michigan probate courts."  *LaMie v. Wright*, 2014 WL 1686145, at \*11 (W.D. Mich. Apr. 29, 2014).

In this case, applying these factors, Beau's claims against Kathryn and the Rossi Defendants are barred by res judicata and collateral estoppel.  Beau, Kathryn, and the Rossi Defendants, parties to this suit, were also parties to the probate court proceeding, which resulted in a valid, final judgment on the merits.  (Doc. #17-3).  The Michigan Court of Appeals affirmed the judgment in July 2014, and, on May 28, 2015, the Michigan Supreme Court denied leave to

appeal.  *See In re Casey Estate*, 306 Mich. App. at 261; *In re Estate of Casey*, 497 Mich. at 1027.

Despite the fact that Beau filed a petition for *writ of certiorari* with the United States Supreme

Court on October 28, 2015, which remains pending, the established rule in the federal courts is

that a final judgment – here, the Oakland County Probate Court's December 2012 Order – retains

all of its res judicata consequences pending decision of the appeal.  *See City of Troy Bldg.*

*Inspector v. Hershberger*, 27 Mich. App. 123, 127 (1970); *Weber v. Van Fossen*, 322 F. App'x

429, 434 n. 3 (6th Cir. 2009).

Moreover, the issues raised by Beau in the instant litigation – namely, issues of paternity,

conversion, and inheritance – were resolved in the prior probate court action.  Specifically, in

order to prevail on his present claims against Kathryn and the Rossi Defendants, Beau must

establish that he was damaged because Everett's 1997 Will was invalid or was superseded (and

that, therefore, he is entitled to the PSI stock) and/or that he is entitled to the contents of the safe

at PSI.  Beau had a full and fair opportunity to litigate these issues before the probate court and,

indeed, did so.  The probate court considered Beau's arguments (raised in this action as well) that

he was Everett's biological son, that Everett had revoked the 1997 Will prior to his death, and

that Everett had gifted to him the contents of the safe at PSI.  (Doc. #17-3).  In doing so, the

probate court specifically concluded that under applicable law Beau was not an heir to Everett's

estate, the 1997 Will was neither revoked nor superseded; and Beau does not have a right to the

safe's contents because there was no valid *inter vivos* gift.  (*Id.*).

In his response briefs, Beau first appears to concede that res judicata operates to bar his

claims against Kathryn and the Rossi Defendants, as he argues that an "exception" to this

doctrine should be applied here, where the doctrine's straightforward application would result in

"manifest injustice."  (Doc. #25-1 at 17).  He then argues, however, that "none of the issues

brought here have been previously litigated," and that the "issues raised in the ongoing probate proceeding are completely different than the tort claims and relief requested" in the federal court litigation. (*Id.* at 19-20). These conclusory arguments are simply without merit; Beau's claims against Kathryn and the Rossi Defendants all stem from arguments that he is entitled to the PSI stock and the safe's contents – issues which were previously resolved against him in the probate court. For these reasons, the Court finds that Beau's claims against Kathryn and the Rossi Defendants are barred by the doctrines of res judicata and collateral estoppel.

(2) Even if the Court Were to Consider the Merits of Beau's Claims Against Kathryn and the Rossi Defendants, They Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

Finally, even if the Court were to conclude that Beau's claims against Kathryn and the Rossi Defendants are not barred by the doctrines of res judicata and collateral estoppel, analysis of the merits of these claims compels a conclusion that they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Beau fails to state a claim upon which relief can be granted.

(a) Intentional Infliction of Emotional Distress

In his amended complaint, Beau pleads a claim for intentional infliction of emotional distress ("IIED") against all of the defendants. To establish a *prima facie* case of IIED, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985)). The outrageous conduct requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts*, 422 Mich. at 603 (quoting Restatement (Second) of Torts §46, cmt. d (1965)). Liability will not result from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Mino v.*

*Clio Sch. Dist.*, 255 Mich. App. 60, 80 (2003) (internal quotations omitted). Rather, liability arises only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Roberts*, 422 Mich. at 608-09; *see also Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998).

The crux of Beau's IIED claim against Kathryn is as follows:

> Defendant Kathryn intentionally and recklessly abused her position of (as the new, loving sister who expressed so much care for Plaintiff and his family) through fraudulent pretenses that gave her real or apparent power to affect Plaintiff's interests. Defendant Kathryn knew Plaintiff was particularly vulnerable to emotional distress and knew that her conduct would likely result in harm due to mental distress.

(Doc. #8 at ¶156). In other words, Beau claims that Kathryn pretended to love him, when she actually did not, and that as a result his "interests" – presumably in PSI and the contents of Everett's safe – were "affect[ed]." (*Id.*). In his response to Kathryn's motion to dismiss, Beau's characterization of Kathryn's actions is even more dramatic, as he asserts that she "befriended [him] through an ulterior motive to win his trust effectively leading her gullible little brother to slaughter." (Doc. #27-1 at 22). Beau further alleges that Kathryn's actions in this regard are "nothing short of outrageous and the discovery of her betrayal was almost as hard as coping with the death of a loved one." (*Id.*).[9]

As Kathryn points out, however, giving a sibling (or purported sibling) the impression that he is loved is not and cannot be considered "extreme and outrageous" conduct. Indeed, Beau concedes as much in his response to Kathryn's motion to dismiss. (Doc. #27-1 at 21 (an IIED claim based on allegations that Kathryn pretended to love him "most likely would fail")).

---

[9] Beau also asserts that Kathryn's "treatment of Everett in the last days of his life was absolutely despicable." (Doc. #27-1 at 22). He further asserts that this, combined with Kathryn's "final cruel act of cremating [Everett] just to hide DNA" left Beau a "broken man." (*Id.*). Even if these allegations are true, however, claims derived from alleged damages to Everett's rights can be brought only by Gerald Rossi, the personal representative of Everett's estate.

Merely claiming that the "totality of what she did [] makes her conduct outrageous" (*Id.*) is insufficient to establish a claim for IIED. Moreover, Beau admits in his amended complaint that, at the time Everett died, he was no longer under the impression that Kathryn was his loving sister and, as a result, took action to prevent Kathryn from depriving him of his asserted interests. (Doc. #8 at ¶¶95-96). Thus, it cannot be said that Kathryn's alleged conduct caused any damage to Beau. As such, Beau's IIED claim against Kathryn fails.

In his amended complaint, with respect to the Rossi Defendants, Beau appears to point to three separate actions that allegedly constitute IIED. First, Beau alleges that, acting in bad faith, Gerald Rossi brought a "retaliatory and malicious conversion suit" against him in the probate court, despite the fact that he (Rossi) had promised Everett that he "would follow through with [Everett's] final instructions" to give the PSI stock and the contents of the safe to Beau. (Doc. #8 at ¶163). The problem with this allegation, however, is that Rossi prevailed on his conversion claim against Beau in the probate court, which belies Beau's contention that the conversion claim was "retaliatory" or "malicious" or otherwise without merit.[10] Secondly, Beau alleges that the Rossi Defendants' refusal to allow him "to return to work" at PSI constitutes IIED. (Doc. #8 at ¶163). Even assuming this allegation is true – which the Rossi Defendants dispute – such an action is neither "extreme" nor "outrageous" under the circumstances. Indeed, if the Court were to find that merely refusing to allow someone to "return to work" constitutes intentional infliction of emotional distress, then almost any terminated employee could bring such a claim,

---

[10] In his response to the Rossi Defendants' motion, Beau argues that several other actions allegedly taken by Rossi during the probate court proceedings give rise to an IIED claim. (Doc. #26-1 at 20-21). Specifically, Beau alleges that Rossi "repeatedly attempted to mislead the state court," "commit[ed] felony perjury in court documents," and submitted a "sworn statement" that was untrue. (*Id.*). For the reasons discussed *infra* in connection with Beau's claims against the Lyneis Defendants, these statements – which by Beau's own admission were made during the course of judicial proceedings – are absolutely privileged, and cannot form the basis of his IIED claim. *See Couch v. Schultz*, 193 Mich. App. 292, 294 (1992).

which certainly is not what the law provides.  And, finally, Beau asserts that Rossi's alleged act of "'trashing' the shawl [Beau's] mom knitted for Everett was malicious" and gives rise to a claim for IIED.  (Doc. #8 at ¶163).  Earlier in his amended complaint, Beau referenced pleading with Rossi for return of this shawl, which "meant nothing to anybody but [Beau's] mom."  (*Id.* at ¶¶146-48).  Even if this allegation is true, however, it certainly cannot be deemed "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Roberts*, 422 Mich. at 603.  For all of these reasons, Beau's IIED claim against Kathryn and the Rossi Defendants should be dismissed.

### (b)   Breach of Contract

In Count II of his amended complaint, Beau asserts a claim for breach of contract against the Rossi Defendants.  (Doc. #8 at ¶¶164-182).  In order to recover on a claim for breach of contract under Michigan law, a plaintiff must prove: (1) that a contract existed between the parties; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach caused the plaintiff injury.  *See Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005).

In this claim, Beau asserts that he is "the intended third-party beneficiary" of a purported contract between Everett and Gerald Rossi.  (Doc. #8 at ¶165).  Although it is difficult to decipher the precise terms of this alleged contract, it appears that Beau is claiming that Everett's alleged verbal statement to Rossi that he was leaving PSI to Beau is a binding contract.  (*Id.* at ¶178).  For example, Beau alleges in his amended complaint that, in April 2011, Everett told Rossi to "give" PSI to Beau upon his (Everett's) death.  (*Id.* at ¶178).  According to Beau, "A promise (contract) absolutely was made with [Beau] clearly identified as the intended third-party

23

beneficiary … [and] Rossi breached his end of the deal for self-serving purposes and deprived [Beau] of the benefit that was to be conferred." (*Id.* at ¶180).

The problem for Beau, however, is that M.C.L. §700.2514 expressly precludes enforcement of an oral agreement concerning a bequest under a contract theory. In *In re Estate of McKim*, 238 Mich. App. 453 (1999), the Michigan Court of Appeals held that the statute setting forth the requirements of a will or devise (then M.C.L. §700.140, now M.C.L. §700.2514) bars the enforcement of oral wills:

> … [W]e conclude that the statute precludes enforcement of an oral agreement concerning a bequest under a contract implied in fact theory. The statute specifically provides that the "only" way to prove the existence of a contract to make a will or devise is by complying with its requirements. The clear language of the statute, especially when combined with other provisions of the Revised Probate Code that bar the enforcement of oral wills, evidences the Legislature's intent to bar agreements to make a will or devise absent a writing.

*Id.* at 456-57 (internal citations omitted). Thus, where Beau's breach of contract claim against the Rossi Defendants stems solely from an allegation that Everett made a verbal statement to Gerald Rossi indicating that he was leaving PSI to Beau, such a promise – even if made – does not give rise to a contract, or, therefore, a claim for breach of that contract.

(c)     Tortious Interference with
Contract and "Economic Advantage"

In Counts III and IV of his amended complaint, Beau pleads claims for tortious interference with contract and tortious interference with "economic advantage" against Kathryn and the Rossi Defendants. (Doc. #8 at ¶¶183-196). The elements of a claim for tortious interference with contract under Michigan law are: (1) the existence of a contract; (2) breach of that contract; and (3) an unjustified instigation of the breach by the defendant. *See Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89-90 (2005). Similarly, in order to prevail on a claim for tortious interference with a business advantage, the

following must be proven:  (1) a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of a relationship or expectancy; and (4) damages.  *See id.* at 90. To prevail on either claim, a plaintiff must allege the intentional doing of a *per se* wrongful act, or the intentional doing of a lawful act with malice and unjustified in law, for the purpose of invading the contractual rights or business relationship of another.  *See Formall, Inc. v. Community National Bank of Pontiac*, 166 Mich. App. 772, 779-80 (1988).

In his amended complaint, Beau alleges that he had a "contract" with Everett, such that "if [Beau] moved to Michigan to take over PSI, the company would be given to him."  (Doc. #8 at ¶185).  Beau further alleges that he had a "valid expectancy to become the owner of PSI."  (*Id.* at ¶192).  As explained above, Beau cannot show the existence of a contract, and thus he cannot show one was tortiously interfered with.  However, assuming, *arguendo*, the existence of such a contract or business expectancy, Beau's tortious interference claims still fail because he has not alleged either Kathryn or the Rossi Defendants took specific, wrongful acts, which caused the breach or termination of that contract or expectancy.

With respect to Kathryn, Beau does not specify what "acts" she allegedly took that interfered with the alleged contract or expectancy.  As Kathryn correctly points out, Beau has not established – or even alleged – that Kathryn somehow prevented Everett from having valid estate planning documents drawn up and executed that bequeathed PSI to Beau.  (Doc. #17-1 at 19). Rather, Beau alleges in his amended complaint that Everett was dealing directly with Gerald Rossi, and then with the Lyneis Defendants, regarding this issue, and there is no allegation that Kathryn was involved.  (Doc. #8 at ¶¶71(c) and (d), 166-70, 178).  At paragraph 76 of his amended complaint, Beau does allege that "Kathryn came to Michigan a week before Everett

died determined to prevent the new will from going into effect." (*Id.* at ¶76).  This statement, however, is wholly speculative and conclusory in nature, without any factual support, and therefore cannot be a basis for denying the instant Rule 12(b)(6) motion.  *See Iqbal*, 556 U.S. at 678.

With respect to Beau's tortious interference claims against the Rossi Defendants, Beau essentially alleges that Gerald Rossi interfered with Everett's alleged promise to leave PSI to Beau by "going with the old [1997] will," which provided for a division of Everett's assets between the two children he fathered with his wife, Alice.  (Doc. #8 at ¶131).  Even assuming this is true, however, Beau has not established tortious actions on the part of Gerald Rossi, who was precluded from acting on an alleged oral statement that would have had the effect of nullifying Everett's otherwise valid testamentary documents.   As such, Beau's tortious interference claims are without merit.

(d)      Fraudulent Misrepresentation

In Count VI of his amended complaint, Beau pleads a claim of fraudulent misrepresentation against Kathryn.  (Doc. #8 at ¶¶205-10).  In order to succeed on a claim of fraud, a plaintiff must establish:  (1) that the defendant made a material representation; (2) that it was false; (3) that when she made it, she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that she made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.  *See Brownell v. Garber*, 199 Mich. App. 519, 533 (1993).  Moreover, pursuant to Fed. R. Civ. P. 9(b), fraud claims are subject to heightened pleading requirements. As the Sixth Circuit has stated:

> … pursuant to the provisions of Federal Rule of Civil Procedure 9(b), in
> alleging  fraud  or  mistake,  a  party  must  state  with  particularity  the

> circumstances constituting fraud or mistake.  We have … interpreted Rule 9(b) to require that a plaintiff allege the *time, place, and content* of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  Stated differently, at a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud.

*Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 498 (6th Cir. 2014) (internal citations and quotations omitted) (emphasis in original).

In this case, Beau fails to identify any material misrepresentation that Kathryn made to him on which he reasonably relied to his detriment.  In his amended complaint, Beau alleges that his claim for fraudulent misrepresentation stems from statements made by Kathryn to him "concerning her professed allegiance to and concern for [Beau]."  (Doc. #8 at ¶206).  Beau further alleges that Kathryn "preyed upon a sensitive and gullible new-found younger brother for the sole purpose of gaining his trust to leverage her financial future."  (*Id.*).  Nowhere in his amended complaint, however, does Beau identify any specific material misrepresentation upon which he could have reasonably relied to his detriment.  At best, Beau alleges that Kathryn behaved in a way that suggested to him that their relationship was amicable and friendly, and that she loved him like a sibling.  Such allegations do not meet the heightened pleading requirements of Rule 9(b).  *See, e.g., Magness v. JP Morgan Chase Bank, N.A.,* 2014 WL 4536633, at *4 (E.D. Mich. Sept. 3, 2014) ("vague and conclusory allegations" that plaintiff was induced in allowing mortgage payments to become increasingly delinquent "woefully insufficient to satisfy the heightened pleading standard imposed by Rule 9(b)").  Moreover, elsewhere in his amended complaint, Beau alleges that he perceived that Kathryn was "angry" about the idea that he would be given PSI, and that he took steps to protect himself from her. (Doc. #8 at ¶¶69, 96).  Such admissions clearly establish that Beau did not reasonably rely to his

detriment on any alleged misrepresentations made by Kathryn.[11]   As such, Beau's fraudulent

misrepresentation claim should be dismissed.

(e)   <u>Civil Conspiracy</u>

In Count V of his amended complaint, Beau pleads a claim for civil conspiracy.[12]   (Doc.

#8 at ¶¶197-204).   Essentially, Beau alleges that the defendants conspired to deprive him of

"what was rightfully his," including PSI, "a very good job," and his "mental and physical well-

being."   (*Id.* at ¶¶201-02).   Courts have recognized, however, that "a claim for civil conspiracy

may not exist in the air; rather, it is necessary to prove a separate, actionable, tort."   *Early

Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632 (1986).   In this case,

where, for the reasons set forth above, Beau's underlying claims fail to state a claim upon which

relief can be granted, his civil conspiracy claim fails as well.

(f)   <u>"Constructive Trust"</u>

In Count VII of his amended complaint, Beau asserts a claim entitled "Constructive

Trust."   (Doc. #8 at ¶¶211-17).   Beau asserts that, in "good conscience," he is entitled to PSI and,

thus, he asks that the Court impose a constructive trust to "prevent a failure of justice."   (*Id.* at

---

[11] In his response to Kathryn's motion, Beau asserts that he reasonably relied on Kathryn's alleged misrepresentations by "let[ting] the caretaker walk out of Everett's office with her loot" and by giving Kathryn the combination to Everett's safe.   (Doc. #27-1 at 28).   Even assuming the truth of Beau's assertions in this respect, he still cannot establish that he was damaged as a result of his reliance on Kathryn's alleged misrepresentations, as the Michigan courts have concluded that Beau is not and was not entitled to the contents of Everett's safe.   (Doc. #17-3).   In other words, Beau also cannot establish that he was damaged as a result of Kathryn's misrepresentations.   (Doc. #17-3).

[12] At the same time, however, Beau asserts that "the Michigan Penal Code labels what [the defendants have] perpetrated against Everett as 'racketeering.'"   (Doc. #8 at ¶198).   And, elsewhere in his amended complaint, Beau includes a section entitled "Criminal Allegations." (*Id.* at ¶¶30-35).   To the extent Beau is attempting to allege a criminal claim under the Michigan Penal Code, it fails as a matter of law because the authority to prosecute criminal offenses is vested solely and exclusively with the prosecuting attorney.   *See People v. Williams*, 244 Mich. App. 252-53 (2001).

28

¶¶215-16).  As this Court has recognized, however, a claim for constructive trust "fails to state a plausible claim because no independent cause of action for constructive trust exists; a constructive trust is merely a remedy."  *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 921 (E.D. Mich. 2012).  Thus, this claim too should be dismissed.

d.    *Beau's Claims against the Lyneis Defendants are Barred by the Judicial Proceedings Privilege*

Beau brings claims against the Lyneis Defendants for IIED and tortious interference with contract and/or economic advantage.[13]   (Doc. #8 at ¶¶150-163, 183-196).  All three of these claims stem entirely from allegations that Mary Lyneis' alleged "perjury resulted in a Fraud upon the Court."  (Doc. #8 at ¶157).  Specifically, Beau alleges that Mary Lyneis submitted an affidavit to the probate court in which she omitted mention of the fact that she prepared multiple drafts of Everett's new will.  (*Id.*).  According to Beau, Kathryn's alleged "INTENTIONAL MATERIAL OMISSION" (in failing to state that numerous revisions were made to the new Will after November 2011), constitutes IIED and tortious interference, in that she committed "felony perjury in court documents."  (*Id.*; Doc. #25-1 at 24-25).

It is well-established, however, that under Michigan law, statements made "during the course of judicial proceedings … are absolutely privileged."  *Couch*, 193 Mich. App. at 294.  The privilege specifically includes statements in pleadings and "extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits."  *Id.* at 295.  The privilege applies to both in and out of court statements made in connection with pending judicial proceedings, and it protects judges, attorneys, parties and witnesses.  *See Oesterle v. Wallace*, 272 Mich. App. 260, 264 (2006); *Dabkowski v. Davis*,

---

[13]  Beau also pleads claims for civil conspiracy and constructive trust claims against the Lyneis Defendants.  (Doc. #8 at ¶¶197-204, 211-17).  These claims fail for the same reasons discussed above with respect to Kathryn and the Rossi Defendants.

364 Mich. 429, 432 (1961). While the judicial proceedings privilege is most commonly raised in defense to defamation claims, Michigan courts have also applied it to nearly every conceivable cause of action, including negligence, fraud, tortious interference, and IIED claims. *See Bielaska v. Orley*, 2001 WL 755921, at *5 (Mich. App. Feb. 9, 2001) (compiling cases and holding that judicial proceedings privilege barred the plaintiff's claims of gross negligence, IIED, defamation, fraud, civil rights violations, and bad faith).

In this case, Beau's claims against the Lyneis Defendants are premised entirely on the allegedly false affidavit submitted to the probate court by Mary Lyneis in the underlying probate proceeding. As set forth above, the judicial proceedings privilege extends to affidavits, and the affidavit provided by Mary Lyneis unquestionably related to, and was pertinent to, the issues in the probate litigation. Thus, the statements made in Mary Lyneis' affidavit are absolutely privileged and, as a result, are not actionable, even if they were false and/or malicious (which the Lyneis Defendants dispute). *See Oesterle*, 272 Mich. App. at 264. For these reasons, Beau's claims against the Lyneis Defendants fail.

### 2. *The Defendants' Motions for Sanctions (Docs. #31, 43, 44)*

After filing their motions to dismiss, the defendants also filed motions for sanctions pursuant to Fed. R. Civ. P. 11(c).[14] (Docs. #31, 43, 44). In their motions, the defendants argue that Beau's amended complaint violates Rule 11(b) in that it is vexatious and frivolous, was brought in bad faith, and has no basis in existing law or fact. (*Id.*). As a result, the defendants

---

[14] As this Court recently recognized, "The law is now well-established that a court need not have subject matter jurisdiction over the principal cause of action to order Rule 11 sanctions, as a motion for sanctions raises a 'collateral issue: whether the attorney has abused the judicial process." *Wolgast v. Richards*, 463 B.R. 445, 448 (E.D. Mich. 2012) (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992)). Thus, although the Court finds that the probate exception applies and recommends dismissal of Beau's claims for lack of subject matter jurisdiction, it may still rule on the defendants' motions for sanctions.

ask this Court to impose monetary sanctions against Beau in an amount sufficient to deter future frivolous actions and to compensate them for the time and expense incurred in defending this action, and to permanently enjoin Beau from filing any further lawsuits alleging the same or similar factual or legal claims without first seeking leave of court. (*Id.*).

### a.   The Applicable Legal Standard

Rule 11(b) provides that, when an unrepresented party presents a pleading to the Court, he is certifying that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery …."

Fed. R. Civ. P. 11(b). Rule 11(c) states that if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). This Court has previously stated that "*pro se* litigants must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law." *El v. Mortgage, Ltd.*, 2009 WL 1953057, at *3 (E.D. Mich. July 6, 2009) (internal quotations and citations omitted).

b.      *The Court Should Decline to Award Rule 11 Sanctions*

In responding to the defendants' motions for sanctions, Beau maintains that he has made a reasonable inquiry to determine that the positions he has taken are warranted by existing law or are good faith arguments for the extension or modification of existing law.  (*E.g.,* Doc. #46-1 at 6).  Indeed, Beau asserts that he has spent "countless hundreds hours of research" to ensure that his claims were well-pled and his position well-defended.  (*Id.*).  Although this Court is recommending dismissal of Beau's claims, the Court concludes that Beau's claims and arguments were not so contrary to existing law as to warrant the imposition of Rule 11 sanctions. Indeed, while the Court ultimately determined that the third prong of the probate exception bars Beau's claims, it notes that this is a thorny area of law not easily navigated even by attorneys and courts.  Similarly, while the Court concludes that Beau's claims are barred by res judicata and collateral estoppel, and otherwise fail to state a claim upon which relief can be granted, they are not so frivolous as to warrant sanctions.  *See, e.g., Gabay v. Park West Galleries, Inc.*, 2010 WL 5391464, at *9 (E.D. Mich. Dec. 22, 2010) (declining to award Rule 11 sanctions despite dismissing complaint on preclusion grounds).

The defendants also argue that sanctions are appropriate under Rule 11(b)(1) because Beau filed the instant federal court action for an improper purpose – namely to continue his alleged harassment of Everett's family, the personal representative of Everett's estate (Gerald Rossi), and the attorneys who represented Rossi in the probate court proceedings, and to needlessly increase the cost of litigation "through a protracted and interminable legal odyssey to force de facto 'disgorgement' of all money and assets that Beau felt he should have inherited." (Doc. #43 at 11).  In other words, then, the defendants assert that Beau has acted "in bad faith, vexatiously, wantonly and for oppressive reasons" in an attempt to "perpetuate vengeance fueled harassment" and to deprive Kathryn and Kirk of "as much as possible of the inheritance to which

32

they are entitled under a will that the Michigan Courts have deemed valid and admitted to probate. (*Id.* at 12).

Having considered the parties' arguments on this issue, the Court is concerned by what appears to be a disrespect for the rule of law by Beau. For example, in the motion for reconsideration he filed with the Michigan Court of Appeals, Beau wrote:

> … In truth, I don't want the Chief Probate Judge who: assigned this case to herself; found a reason to deny an obvious gift; and ignored her ultimate duty to "discovery and give effect". This case was decided before it even started. I'll file my case in the "Court of Public Opinion" and pursue a fairer system of justice through a diversity action. The courts were supposed to protect my father – he deserved better but Michigan's courts have failed miserably in their duty to him. What a sin. Despite the pleadings of my wife and children to "just let it go", I can't. This is my dad we're talking about and many people he trusted have stabbed him in the back.

(Doc. #43-7 at 11). In other words, then, Beau made clear his intent to file the present action in an attempt to circumvent the decisions of the Michigan courts that ruled against him, and he acknowledged that even his own wife and children have recognized that his continued litigation is unreasonable, and that he needs to "let it go," but he cannot and will not do so. (*Id.*). In addition, the Court notes that while Beau has made complaints to the Oakland County Sheriff's Office, the Oakland County Prosecutor's Office, the Michigan Attorney General's Office, and the United States Attorneys' Office, it appears that none of those bodies determined that Beau's allegations have any merit. Such statements and actions certainly suggest that Beau is on a one-man crusade to obtain what he views as "Justice for Dad." (Doc. #8 at ¶31).

Nevertheless, the Court recognizes the unique and difficult personal and familial circumstances underscoring this case. With all of the foregoing in mind, the Court recommends declining to award sanctions under Rule 11(b)(1) at this time. For purposes of Fed. R. Civ. P. 11(b)(1), the Court has the discretion to determine whether an "improper purpose" exists. *See*

*Kircher v. Charter Twp. Of Ypsilanti*, 2007 WL 4557714, at *3 (E.D. Mich. Dec. 21, 2007).  In making this determination, the court applies an "objective standard of reasonableness."  *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)).  Here, when considering all of the facts set forth in Beau's amended complaint and other filings with this Court, it certainly appears that this is a highly personal issue, which is provoking in Beau a strong desire for what he perceives as "justice."  Given the nature of this case, as alleged by Beau, it is not surprising that he has pursued any and all available avenues in an attempt to obtain the result he desires.

Accordingly, the Court recommends declining to award sanctions at this time, as the it is not satisfied that Beau instituted this litigation for an "improper purpose."  Beau should be admonished, however, that the Court will not look favorably on any attempts to institute new litigation in this Court arising out of the facts discussed herein and, if such litigation is instigated and ultimately determined to be frivolous, monetary and other sanctions may be imposed.

## II.   RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motions to Dismiss filed by the Lyneis Defendants, the Rossi Defendants, and Kathryn Casey [**14, 16, 17**] be **GRANTED** and Beau's amended complaint [**8**] be dismissed in its entirety and with prejudice.[15]

**IT IS FURTHER RECOMMENDED** that the Motions for Sanctions filed by the Lyneis Defendants, Kathryn Casey, and the Rossi Defendants [**31, 43, 44**] be **DENIED**.

Dated: November 30, 2015                                  s/David R. Grand
Ann Arbor, Michigan                                          DAVID R. GRAND
                                                                        United States Magistrate Judge

---

[15] Despite the fact that Defendant Kirk Casey has not filed a motion to dismiss, the Court finds that the analysis set forth above applies equally to Beau's claims against him.  Thus, the Court **RECOMMENDS** dismissing Beau's claims against Kirk *sua sponte* in their entirety and without prejudice as well.  *See Hall v. Green Tree Servicing, LLC*, 2012 WL 2367137 (E.D. Mich. June 21, 2012) ("a court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where it is clear that the same ruling would inevitably apply to each of the defendants.") (internal quotation and citation omitted).

<u>**NOTICE TO THE PARTIES REGARDING OBJECTIONS**</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2015.

s/Eddrey O. Butts

EDDREY O. BUTTS

Case Manager